## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CAMILO K. SALAS, III,** *As Trustee Of The Salas Children Trust*, | **CIVIL ACTION** |
| **VERSUS** | |
| **COMMONWEALTH LAND TITLE INSURANCE COMPANY** | **NO. 21-00070-BAJ-SDJ** |

<u>**RULING AND ORDER**</u>

Before the Court is Defendant's **Motion For Change Of Venue Pursuant To 28 U.S.C. § 1404(a) (Doc. 5)**, seeking an order transferring the above-captioned action to the U.S. District Court for the Northern District of Florida, Pensacola Division. Plaintiff opposes Defendant's Motion (Doc. 10). For reasons to follow, Defendant's Motion will be granted, and this action will be transferred to the U.S. District Court for the Northern District of Florida, Pensacola Division.

### I.    BACKGROUND

This is a title insurance dispute involving a residential property located in Alys Beach, Florida. Plaintiff, as Trustee for the Salas Children Trust ("Salas Trust"), purchased the Florida property from EBSCO Gulf Coast Development, Inc. ("EBSCO") in 2009. (Doc. 1-1 ("Petition") at ¶¶ 8-10). Defendant, a Florida insurance company, issued the Salas Trust an owner's policy of title insurance in connection with its purchase (the "Title Insurance Policy"). (*Id.* at ¶ 10).

The transaction documents governing Plaintiff's purchase of the Florida

property required the Salas Trust to build a home on the property within two years. (*Id.* at ¶¶ 11-13). The Salas Trust failed to meet its deadline, and in 2015 EBSCO sued for breach of contract in Florida state court. (*Id.*). Notably, Plaintiff removed EBSCO's state court action to U.S. District Court for the Northern District of Florida, Pensacola Division, where it was assigned Case No. 3:15-cv-586 (the "Florida Lawsuit").

Plaintiff demanded that Defendant provide the Salas Trust a defense and indemnification in the Florida Lawsuit, under the terms of the Title Insurance Policy. (Petition at ¶ 19). Defendant denied Plaintiff's demand, contending that the Title Insurance Policy did not provide coverage for EBSCO's claims in the Florida Lawsuit. (*Id.* at ¶ 15). Ultimately, the Florida Lawsuit lasted nearly 3 years, during which time Plaintiff allegedly incurred attorneys' fees, costs, and expenses approaching $850,000. (*Id.* at ¶ 22).

On January 7, 2021, Plaintiff initiated this action in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, alleging that Defendant breached the terms of the Title Insurance Policy by failing to provide a defense and indemnification in the Florida Lawsuit. Plaintiff invoked the Nineteenth Judicial District Court's venue under La. C.C.P. art. 42(7), which provides that actions against foreign insurers "shall be brought in the parish of East Baton Rouge." La. C.C.P. art. 42(7). (*Id.* at ¶ 5).

On January 28, 2021, Defendant removed Plaintiff's action to this District, invoking the Court's diversity jurisdiction. (Doc. 1 at ¶ 7).

Now, Defendant moves to transfer Plaintiff's action to the Northern District of Florida, Pensacola Division, asserting that all relevant factors favor a change of venue. (Doc. 5). Plaintiff opposes Defendant's Motion. (Doc. 10).

## II.    ANALYSIS

### A. Standard

District courts have broad discretion in deciding whether to transfer a case, subject to the limitations imposed by the text of 28 U.S.C. § 1404(a), and by "[controlling] precedents … that interpret and apply the text of § 1404(a)." *In re Volkswagen of America, Inc. (Volkswagen II)*, 545 F.3d 304, 311 (5th Cir. 2008).

The text of § 1404(a) directs the Court to consider where the action might "have been brought," "the convenience of parties and witnesses," and "the interest of justice." 28 U.S.C. § 1404(a).

Where the action might "have been brought" is simply a question of whether the action originally could have been filed in the proposed destination venue. *Volkswagen II*, 545 F.3d at 312.

Whether "a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice" is determined by applying "the private and public interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)." *Id.* at 315.

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity

3

of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."

Although the *Gilbert* factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive. Moreover, … none can be said to be of dispositive weight.

Id. (quotation marks, alterations, and citations omitted).

### B. Discussion

#### 1. This Action "Might Have Been Brought" in the Northern District of Florida.

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Burton v. Travelers Ins. Co.*, No. 16-cv-00417, 2017 WL 390585, at *3 (M.D. La. Jan. 27, 2017) (Jackson, J.) (quoting *Volkswagen II*, 545 F.3d at 312. Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391. Here, the property at issue is located in the Northern District of Florida, nearly all of the acts and omissions underlying the dispute occurred there, and the parties do not contest that Plaintiff could have initiated this action in that District. The threshold requirement for transfer is met.

#### 2. All Private Interest Factors Favor Transfer.

##### a. Proof is Most Easily Accessed in the Transferee District.

There is no dispute among the parties that the events giving rise to this litigation occurred in the Northern District of Florida. According to the Petition, this action concerns (i) Plaintiff's contract to purchase the Alys Beach, Florida lot, which "was prepared in Alys Beach, Florida by Ms. Karen Terrell, who was then EBSCO's

4

Vice-President of Sales," (Petition at ¶ 6); (ii) a release of that first purchase agreement, which "was likewise prepared in Alys Beach, Florida by Ms. Terrell," (*id.* at ¶ 7); (iii) a new contract for Plaintiffs' purchase of a different Alys Beach lot, which "was likewise prepared in Alys Beach, Florida by Ms. Terrell or Mr. Tom Dodson," (*id.* at ¶ 8); (iv) Defendant's preparation and execution (in Florida) of various documents related to these transactions, including the Title Insurance Policy, (*id.* at ¶¶ 9-10); (v) EBSCO's initiation of the original Florida Lawsuit, which was filed in Florida state court and thereafter removed (by Plaintiff) to the Northern District of Florida (*id.* at ¶¶ 11-12); and (vi) Defendant's January 7, 2016 written denial of Plaintiff's claims related to the Florida Lawsuit, which was (apparently) prepared in, and sent from, Florida, (*id.* at ¶¶ 14-15). Given the foregoing allegations, it stands to reason that a substantial portion of the evidence in this case is located in the Northern District of Florida, not in this District. This factor strongly favors transfer.

> b. **Compulsory Process Is Unavailable In The Middle District.**

This Court's subpoena power is limited to persons residing, employed, or regularly transacting business within 100 miles of Baton Rouge, Louisiana. Fed. R. Civ. P. 45(c)(1). Alys Beach, Florida is well-beyond the Court's reach, and the face of Plaintiff's Petition names multiple potential non-party witnesses—specifically, EBSCO and its various agents and employees. Plaintiff does not dispute that this Court cannot compel these non-party witnesses to attend proceedings in this District, *or* that these non-party witnesses are subject to compulsory process in the Northern District of Florida. This factor also strongly favors transfer.

### c. **Transfer Will Minimize Witness Attendance Costs.**

Additionally, transfer will minimize witness attendance costs. As noted, multiple potential witnesses to this dispute are located in the Northern District of Florida. Even if this Court could secure their attendance, the cost of attendance in this District would be significantly higher than if this action proceeds in the Northern District of Florida.

### d. **Trial Would Be Easiest, Most Expeditious, and Least Expensive in Florida.**

Multiple non-party witnesses and the majority of the documentary evidence are located in the Northern District of Florida. Further, Plaintiff litigated the prior Florida Lawsuit for nearly three years in the Northern District of Florida, and has therefore familiarized itself with that Court's local rules and procedures. Given these facts, the Court further finds that transferring this case to the Northern District of Florida is likely to make trial easier, more expeditious, and less expensive. This factor also favors a transfer. *Norman v. H&E Equip. Servs., Inc.*, No. 14-cv-367, 2015 WL 1281989, at *7 (M.D. La. Mar. 20, 2015) (deGravelles, J.) (finding this factor weighs in favor of transfer when the transferee venue "is closer to the location where the accident occurred and the witnesses who are most likely to testify.").

### 3. **Two Public Interest Factors Favor Transfer, And No Public Interest Factors Disfavor Transfer.**

#### a. **Transfer Will Alleviate Court Congestion.**

Transfer to the Northern District of Florida will unquestionably alleviate Court congestion. It is no secret that this District "labors under a high case load and

a heavily congested docket. In fact, it was named the fourth busiest district in the United States based on 'weighted filings.'" *White Hat v. Landry*, 475 F. Supp. 3d 532, 555 (M.D. La. 2020). And while this District is also recognized among the three most productive district courts in the country,[1] it remains true that cases are resolved at a much faster rate in the Northern District of Florida.[2] This factor favors transfer.

### b. Florida Maintains A Local Interest In This Dispute.

Next, the local interest factor plainly favors transfer. As discussed, the property at issue is located in the Northern District of Florida, and virtually all of the key events occurred there, including the Florida Lawsuit. By contrast, this District maintains no discernible connection to the events underlying this action.

### c. The Same Rules Govern This Dispute Regardless Whether Louisiana Law Or Florida Law Applies.

The remaining public interest factors require the Court to consider which forum would be most familiar with the law governing the case, and whether unnecessary conflict of laws problems can be avoided. Here, the parties agree that each of these factors is essentially moot, because "Florida law and Louisiana law are interchangeable on the relevant issues, namely interpretation of the [Title Insurance

---

[1] *See* Middle District of Louisiana is Nation's 3rd Most Productive U. S. District Court (Feb. 19, 2019), *available at* https://www.lamd.uscourts.gov/news/middle-district-louisiana-3rd-most-productive-us-district-court-feb2019.

[2] According to the most recent data available from the Administrative Office of the United States Courts, the median time interval for a case to conclude in this District is 24 months, whereas it is only 6.7 months in the Northern District of Florida. *See* Table C-5, U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2020, *available at* https://www.uscourts.gov/statistics/table/c-5/judicial-business/2020/09/30.

Policy]." (Doc. 5-1 at 12; *accord* Doc. 10 at 21 ("[T]here are no conflicts between the laws of Louisiana and Florida that would apply to this case."). Given the parties' agreement that the same rules apply regardless whether this dispute is decided according to Florida law or Louisiana law, the Court determines that the remaining public interest factors are neutral.

In sum, all private interest factors and two public interest factors favor transfer, and no factors disfavor transfer.

### 4. The Plaintiff's Choice of Forum

Finally, the Court weighs the foregoing *Gilbert* factors against the "Plaintiff's choice of forum, which receives deference." *Burton*, 2017 WL 390585, at \*4. Here, for two reasons, the Court determines that Plaintiff's interest in this forum is minimal, at best.

First, Louisiana's venue rules required Plaintiff to initiate this action in the parish of East Baton Rouge, La. C.C.P. art. 42(7). Thereafter, Defendant removed Plaintiff's action to this District. The procedural history of this case calls into question the extent to which Plaintiff actually *chose* this forum.

Second, as discussed, Plaintiff has previously invoked the protection of the Northern District of Florida by voluntarily removing the Florida Lawsuit to that District. Plaintiff's prior experience in the Northern District of Florida indicates that Plaintiff is perfectly capable of zealously pursuing its rights in that forum.

Considering these facts, the Court determines that Plaintiff's "choice" of this forum—to the extent it was a choice—should not outweigh the *Gilbert* factors favoring transfer.

8

III.   **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant's Motion For Change Of Venue Pursuant To 28 U.S.C. § 1404(a) (Doc. 11) be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall transfer the above-captioned action to the U.S. District Court for the Northern District of Florida, Pensacola Division.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Leave To File Sur-Reply In Opposition To Defendant's Motion For Change Of Venue (Doc. 14) be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 12th day of July, 2021

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**